Good morning, Your Honors. Kevin Mapes here representing the Plaintiff and Appellant Konell Construction. This case involves the interpretation of a notice provision in a fairly unusual, or at least an insurance provision that has not been litigated at all nationwide. There are two questions before the Court today. First, is the only reasonable interpretation of this notice provision one that would find the notice in this case untimely before the policyholder ever had any opportunity to even know that there was a potential claim against it that could be covered? And second, even if that interpretation is the only reasonable interpretation, can the insurer rely on it without a showing of prejudice? The language of the exclusion itself provides that a pollution incident to be covered must be reported by the insured to the company within 30 days from the commencement of the incident. The District Court adopted the insurance company's interpretation of that that said 30 days is 30 days regardless of whether the policyholder ever knew about it. But you said whether the policyholder knew or should have known about it. Absolutely. What's to stop Konell before it picks up the balance of what material it is transporting, inspecting it to see whether it has pollution materials in it? Nothing, Your Honor. If the ruling of this Court is, in fact, that a policyholder should know or should know before that notice provision is triggered, then that would probably be a fact question at issue in this case, whether Konell Construction should have known that this fill material was potentially contaminated. In fact, Konell had been told that it was clean fill dirt, but if this Court's ruling is as we suggest it should be, that would potentially at least be a fact question for the trial court. It's our position here that the insurance company position is not reasonable at all for a couple of reasons. The most significant and one that's briefed most thoroughly is that it's unreasonable to find late notice before somebody could know that they had anything to do. The policy language itself suggests that as well, where it says that the pollution incident must be reported to the insurer by the insured. That suggests that the insured needs to know that he has something to report. We are told by the Oregon Supreme Court in the Hoffman case that the courts should not adopt a policy interpretation that would render a provision meaningless. Here, if the insured was supposed to report something before they ever knew they had something to report, that reporting duty is essentially rendered meaningless. Finally, the position that is advocated by the insurer and adopted by the district court here effectively makes a third party the arbiter of coverage in a situation where you don't have a clear and obvious pollution incident. The situation wouldn't come up if you had somebody working with a backhoe and going into an underground tank that suddenly resulted in a gushing of petroleum products. In a situation like this, where the policyholder had no reason to know that their work could conceivably have given rise to a pollution incident, the third party claimant could be in a position of deciding whether there is coverage or not simply by when they inform the insured that they think a pollution incident had occurred. In contrast, the position that is offered here by Connell is reasonable. It protects the reasonable expectations of the insured that they will have this limited pollution coverage provided that as soon as they know they've got a problem, they provide the insurer with notice of that. It does not render the provision meaningless. It allows the policyholder to fulfill its obligation to provide notice. But the reasonable expectation of the policyholder is an item of policy interpretation only when the language itself cannot be discerned by the plain meaning of the terms used. That's true. Here is the 30-day limit. Why don't you address the Oregon law which requires prejudice to the insurer on late notice? I'd be happy to, Your Honor. Every Oregon case that has ever addressed a notice provision within a liability insurance policy has required the insurer in order to rely on late notice as a defense to coverage to make a showing that that late notice was prejudicial to the insurance company. Was any such showing made by the insurer in this case? There's been no showing made whatsoever, Your Honor, and I think it's generally agreed that there would be no prejudice. The District Court here concluded that prejudice should not be required. That's correct, Your Honor. That, of course, would be the general rule if someone made a claim outside the limits of a claims-made policy. I don't know Oregon law, but law in many places supports that if it's not a claims-made policy, prejudice has to be shown on late notice. You're saying that is Oregon law? That is the law in Oregon, Your Honor. There is not an Oregon case that has head-on addressed whether under a claims-made policy there needs to be a showing of prejudice. The insurance company in this case presented case law from other jurisdictions where courts had said that under a claims-made policy you did not need to show prejudice and gave that exact distinction that you just gave. Here, however, A, there is no Oregon case law even holding that you do not need to show prejudice under a claims-made policy. There is Oregon law saying that prejudice is required under an occurrence-based policy. Here, this policy is, when you look at the language, it's a variation of an occurrence policy. It's not a claims-made policy. There's nothing in the policy that requires the third-party claim to be brought within the policy period. In fact, what it actually provides here is essentially that there's coverage as long as a pollution incident occurs during the policy period and the various other factors, including notice, are met. Here, assuming that there is proper notice, a claim could actually be made years after the policy period and still be covered by the policy. That's a hallmark of an occurrence-based policy, not a claims-made policy. That's sort of the extreme potential result of the ruling of the district court here. In a situation like my client's situation where they're hauling infill dirt, the prudent thing to do would be to call the insurance company after each day's work and say, we've got a potential for a pollution incident here. We don't have any facts to support it, but there's always the potential out there. And if they did that, and three years down the road, a third-party claimant comes in and says, in fact, that was contaminated infill dirt and that was a pollution incident, the insurance company would be obligated to apply coverage. So you're saying that the 30-day notice period is not also the boundary of the claims-made period? That's correct, Your Honor. That simply is a provision simply says that the insured must report a pollution incident within 30 days. Whether or not a claim has been made. Whether or not a claim has been made. I want to make sure I understand the hypothetical. The provision, the conditions of the coverage say that the incident must commence during the policy period. The incident must commence during the policy period, but not the claim, Your Honor. For instance, you could have- Did you be calling-Canel would be calling in and say, well, there may be, but there hasn't actually been. And then it happens three years down the road, and then because you've given notice, you avoid the notice problem. But how do you get around the actual incident? The actual incident would have had to occur during the policy period, Your Honor. The hypothetical was more the situation, much like we have here. When Canel delivered this fill dirt, they did not believe that there was a pollution incident. It turns out that there was. They could have provided notice promptly that we did work. Who knows, maybe it involved a pollution incident. And even three years later, if the customer had brought the claim saying this fill dirt was contaminated and is causing me to have to incur all sorts of remediation expenses, as long as the pollution incident occurred back during the policy period when Canel delivered the fill and there was some sort of notice provided, then there would be coverage under the policy. Unless the Court has any questions, I have no further. Well, I guess you may want to do this in your rebuttal. But I understand the appellee's argument to be that the insuring agreement paragraph 1B5, which has this notice requirement, is part of the definition of the defined coverage. So that it's sort of like a claims-paid policy. I'd be happy to address that issue, Your Honor. I don't know if the appellee's arguing exactly what I framed, so maybe you could address that. The issue, as it's been raised by the appellee, is the distinction between a condition of coverage and a condition of forfeiture, which is a concept in Oregon law that comes out of first-party property insurance policies. In the ABC case, ABC Division case, which was a first-party property case, the policyholder had alleged that the insurer was estopped from raising certain defenses to coverage. And the Oregon Supreme Court said that you cannot be estopped from basic things that are conditions of coverage, not conditions of forfeiture.  One, that concept does not transfer to the third-party liability context. This was a decision based on a different type of policy. An estoppel claim has not been made here. So in the first instance, it's really not applicable. Even if it is applicable, it doesn't apply here, particularly to that particular condition, which should be viewed as a condition of forfeiture, not a condition of coverage. And a significant reason for that is because of the fact that this notice is effectively supposed to be within the control of the insured. There has been a pollution incident which gave rise to coverage under the policy, but the insured has a responsibility to provide notice to the insurer of that pollution incident, we would argue, once they knew or reasonably should have known of it. So essentially there is coverage, and that coverage could be forfeited if the insured does not follow its obligations under the policy. It's not a situation where the third-party claim is what's defining the coverage. The third-party claim is what should define the coverage. Then the insured has a responsibility to provide notice at the risk of potentially forfeiting coverage. So that should be viewed. It doesn't change it to any kind of a claims-made policy. It's still an occurrence-based policy. Thank you. Counsel? Good morning, Your Honors. Gregory Baird, representing Valiant Insurance. I believe we've aptly phrased that there's two issues here. A, what's the proper policy interpretation, and B, whether or not a prejudice requirement can be grafted on the kind of policy at issue here. With respect to determining the proper interpretation of the policy, there's no dispute. Oregon law applies. Oregon law requires that the intent of the parties be governed from the policy terms, not the reasonable expectations of the insured, not hypotheticals which may be advanced by counsel, but rather by what the policy says. So our job in interpreting the policy is quite constrained under Oregon law. It's to give the language its plain meaning. The language in question is as follows, and it is contained within the insuring agreement, which will be critical to the discussion of whether or not a prejudice requirement can be grafted. The insuring agreement says that the insurer will cover a loss only if the pollution incident is reported within 30 days of commencement of the pollution incident. That is the language at issue and must be given its plain meaning. The insured asks this court to interpret 30 days from the commencement of the pollution incident to be 30 days from when the insured discovers the pollution incident. If the court were to apply that, you will have rendered this provision meaningless. When the insured discovers the pollution is not the same as when it commences. It simply isn't. And that language in its plain meaning cannot be given the interpretation that is advanced by the insured. Well, it wouldn't exactly be meaningless. It would say that there's the implied sense that the insured presumably has to know about the incident to report it. It's imposing a very strict 30-day time limit on the insured to get that, once it knows about it, to get that to the company. It does, in fact, tie into the prejudice argument, which I know you'll be getting to. But I'm skeptical that you could resolve this case on the notion it renders it meaningless. It clearly is implying into the plain language a knowledge requirement or a should-have-known requirement. Because if it's reported to the insurer by the EPA, it is not in compliance with the insuring agreement. It has to be reported by the insured, correct?  To the company. The requirement of the provision is that the insurer have knowledge of the release of the pollutants within 30 days. The insured defines its risk. Now, is the word incident a term of art in Oregon insurance law? It is not. It just talks about pollution incident. Correct, and the policy defines that as any release of a hazardous waste or contaminant into the environment. Is there any Oregon law about whether... You're saying the policy language defines that? The word pollution incident is expressly defined in the policy terms, Your Honor. Okay, but in terms of incident, does it have any issue of knowledge? It does not. Can there be an incident when the insured doesn't know of something or have reasonable grounds to know of it? And the answer is the pollution incident is defined. It's expressly defined as the release of the waste into the environment. There is no language in the policy that predicates coverage or any obligation to report so as to trigger the insuring agreement on the insured's state of knowledge. No language whatsoever. So there is nothing suggested in this policy language which would support the interpretation that it's about insured. And just so I can understand, the companies find it to cover its risk, and I take it by taking the plain language, it puts the burden then on the insured to monitor actively the sites at which it has deposited dirt so that it would continue day by day in effect to check whether any pollution incident has occurred. That's how it would get around this knowledge notice concept. And that's one option, Judge Fischer. The other option is that the insurer has defined the policy in a way that there simply will be pollution incidents that they're not going to cover, whether the insured knows about it or not. And that certainly... No, I'm accepting that that's... I'm just trying to figure out from a matter of shifting, you know, people buy insurance coverage to protect them. That's why they pay the money. Correct. Not on the assumption that they're going to have one incident covered and the other not covered by the fortuity, but whether they happen to know about it or not. So then looking at it from the insured standpoint, the insured addresses the shifting of risk by either personally checking sites of its activity or working out some arrangement with the site owner or its agent to notify it immediately upon any suspicion of an incident. Then it can come within the 30-day timeframe. Correct. It would be no problem to take a soil sample from any fill lot and determine... David, I don't know if it... I'm not sure who all of your customers are for this type of coverage. That's in the record, but if it's a contractor, let's say, how could they necessarily test all the components delivered by different subs? Suppose you had siding on a building and it looks fine when you look at it. You can't tell, but there's some defect in the siding so that over time it's going to release some toxic chemical, and no one has figured that out. There'll be a lot of litigation about that later, but someone's bought insurance for that. Your position is there is a pollution incident. The contractor doesn't know about it, doesn't give notice, it's not covered. Let me address that, Judge Gould, because I believe your question assumes something that we dispute, and that is you say they've bought insurance for that, which, again, presumes that the insured's knowledge of the event is somehow a defining term of the policy, and we submit there is no policy language which supports that conclusion. There is no exception to the reporting requirement. Then maybe I misspoke there. Okay. They haven't bought insurance for that if the coverage doesn't cover that. That's exactly my point, Your Honor. If it doesn't fall within the insuring agreement, all of the rhetoric with respect to forfeiture of a claim or we're not getting what we paid for, yes, you are getting precisely what you paid for. Why don't you address the second point, which is why is it different if the 30-day reporting requirement is found in the insuring agreement than if it is found in a condition to coverage? I'd be happy to, Judge Bay. The insuring agreement defines whether or not the parties even have a contractual obligation that they have to talk about. If there is no contractual obligation under the insuring agreement, there is nothing to forfeit. The prejudice requirement, both in Oregon and nationally, is grafted onto certain types of coverage to stop an insured from losing coverage for an otherwise covered event. In other words, all of the prejudice notice cases involve claims in which the insured and Judge Gould, this will get back to the point I just raised with you. The insured indeed bought coverage for this event. It falls within the insuring agreement. Courts say it would be unfair, based on a general condition of forfeiture, to lose an event that is the subject to your contractual bargain. Contrast that with a claim that never falls within the insuring agreement. But it doesn't fall, according to you, because of a condition. Well, because of a reporting requirement that's contained specifically within the insuring clause, and that's why we equate it, Judge Bay, to a claims-made policy. Claims-made policies all have a reporting requirement, and those policies only are invoked. In other words, the coverage grant is first invoked so that one would even look to an exclusion or a condition if certain events are first reported to the insurer within the reporting period. This is akin to that. It says the event, i.e., in this case, a pollution incident, must be reported to the company within a defined period. But a claims-made policy is invoked whether the claim is reported to the insurance company or not so long as the claim is made during the policy period. Well, that is not accurate, Judge Bay. Claims-made policies have two requirements. They have a claims... It depends on the language of the claim. And that gets back to a very critical point. All of this is defined based on the actual terms of the policy in question, not theoretical views with respect to claims-made policies or other types of coverage. It's this specific policy language that we must look to. Is this language unique? I mean, if we went to... It is. One of the insurance treatises, would we find language like this, or is it sort of a new insurance vehicle or whatever? If you did, Judge Gould, you would have achieved the research skills I don't have. I can tell you that, historically, pollution coverage all ceased under general liability policies. In approximately 1986, through the adoption of what is known as the absolute pollution exclusion, insurers decided that the premiums did not adequately cover the risk of pollution liability. In the late 1990s, certain insurers, mainly small market insurers such as Valiant Insurance, decided that they would write very limited pollution coverage and get back into the market to some degree. And when they did that, they made it extremely specific. It all has low limits, and there are many qualifications within the insuring agreement. Expressing the intent that we do not want in this in its entirety. We are going to specifically define precisely what it is we cover and what we do not cover. And I submit that Valiant Insurance did that with clarity in this case. And if I may quickly, Judge Fischer, I'm concerned that you don't understand my argument with respect to rendering a term meaningless, and let me see if I can expand on that. If you adopt a discovery rule, you have written out the word commencement of the pollution incident. Because discovery has no relation to when the release of pollutants commences. The two simply aren't the same thing. Such that if you have a release, let's say it's a broken underground pipe, which is a fairly common pollution case that you deal with when you're building a road, but you don't know it. It doesn't have a surface release. We know exactly when that happened. They built the road on April 14. The insured doesn't receive notice of it until 60 days later when it percolates to the surface. There's no dispute factually and under the policy terms that this event commenced in April. And if you grab the knowledge requirement on it, you have literally taken the word commence out of the policy. Not when you have a language saying the insured reports. I'm not tracking. Well, if it happened on the first and you don't learn about it until the 60th. If that's all you have in the insuring agreement, then you're right. But where you put in that the report must be by the insured to the insurer. Doesn't that subsume that the insured knows about it? Well, certainly. I don't expect that the insured reporting things that it doesn't know about. But it doesn't subsume that the insured must have knowledge of it. And if it does not, then the coverage obligation for 30 days doesn't begin to run from the language as described, i.e. the commencement of the release rather than the insurance knowledge. Well, it just depends. I understood your argument. I just said you have your argument that you just made. Hasn't made it meaningless under a reading of the clause points out. But it renders it meaningless. Given your interpretation that I do understand. Thank you. OK. I have been wrong. Please. You have. Would you address the point raised by your learned counsel opposite that it makes a difference, whether it's a condition of coverage or whether it's simply a condition which defies its coverage. I will, Your Honor. First off, where the particular language is in the policy is something that is certainly within the control of the insurance company. And they should not be able to get a different standard simply by moving around various policy language. Are there any cases in Oregon regardless who put it in there? You signed it. You took it. So is there any other cases in Oregon which say that a condition which is in the grant of coverage has a different effect and does not require prejudice as far as notice, but where it comes in a separate part of the agreement and the condition it does. Not specifically, Your Honor. There's there's the ABC division case, which, as I mentioned before, is a first party property case determining, deciding whether or not a carrier can be stopped to deny coverage under a first party property policy. There is no Oregon case that I'm aware of under a liability policy where a court has addressed whether this this distinction matters in any way, shape or form. And I would submit that the fact that this is a condition that is expressly written to be under the control of the insured, the policyholder must report, only suggests that this is something that is not truly a condition of coverage, regardless of where they put it in the policy. It's really an opportunity for the insured to potentially forfeit coverage once there's been a pollution incident. Let me ask you another question. If you concluded your response to Judge Beyer. My preface is these insurance issues are always difficult, you know, for hundreds of years because language of policies changes. And if there's no law on this particular language, because it's a new vehicle, what it makes me wonder are two questions. One, has the Oregon Supreme Court given rulings on general principles, you know, like interpreting a policy against the insurer if it's ambiguous? Of course, here it may not be ambiguous or it may be. But, you know, that's that's what I mean by a general principle. Are there general principles that decide the case when we have this new language or should we certify this issue? It's my second question to the Oregon Supreme Court, which might or might not take it. But we have that option, I think, in a case like this, we could ask them to decide. Your Honor, there are general principles of contract interpretation that both parties have cited. And, of course, not surprisingly, we disagree a little bit on how they should come out on this language. The Hoffman construction case is a good statement from the Oregon Supreme Court. It includes the language that's been long held law that the primary intent or primary purpose is to get to the intent of the parties, but also says that the focus should be on the language of the policies themselves. It's also the case that has strongly suggested that you do or what I've stated, that you cannot interpret a policy provision in a way that renders that renders it meaningless. That is the map that the court has to work with. And we believe that applying that standard, you come out in favor of the policyholder, because if the defendant's position is unreasonable as a matter of law, the policyholder plaintiff wins. If both the positions put out by the policyholder and the insurer defendant are both reasonable interpretations, then, in fact, the provision would be construed against the insurer. And, again, plaintiff policyholder prevails. The only situation where the policyholder loses in this case is if the only reasonable interpretation is that put forward by the insurance company. And I would suggest that without resort to the Supreme Court, that's simply not the case. This is an issue that could be certified to the Supreme Court. And, in fact, it's something that we thought about and concluded against asking the district court actually to refer the matter. But it's certainly within this court's power to do so. Well, the reason it comes to my mind is I don't know if they would take it, but it is a unique provision. And you've got some good general principles, like the one you mentioned. The appellee has some general principles, too, on coverage. And since there are good counsel on both sides, I wondered if the Oregon court might take it if we asked them to. Because it is of some concern to me, at least. I don't know how my colleagues view it. But it's of concern to me to make a state law interpretation on a very unique issue without at least giving the state court a chance to step in if it wants to. I can understand that position, Your Honor. There was one final point I wanted to make on rebuttal, if I could. Counsel suggested that under this language, it's effectively a requirement that the policyholder, in fact, know of an incident within 30 days. And I think it's an important point that if that's what they wanted the policy to say, they could have said that. Other policies issued by other carriers with similar limited pollution coverage have, in fact, included such requirements, such as in the Matador case in the Fifth Circuit where we're dealing with a policy that said it needs to be reported within 30 days of the incident and the insured needs to know about it within seven days of the incident. Valiant didn't put that provision in their policy. They did not put a provision in their policy that said it needs to be reported within 30 days, whether or not the insured knows about it. Isn't there a 72-hour provision in this policy also? There is a provision that states that the incident must commence and end within 72 hours. All right. Thank you. Further questions? Counsel for the insurance company, do you have a position on certification that you'd like to articulate? We haven't decided to do it, but you're entitled to share your views. I don't have a specific position. I have some observations that you may wish to consider. In other matters which have been remanded, and I believe one was the Chuck Smith painting case, but please don't hold me to that citation because I wasn't prepared on this issue. The last time I believe that the Ninth Circuit certified an issue to the Oregon Supreme Court, what they responded to you with was a recitation of the Hoffman rules and asked you to apply them. And I suspect that is likely what you would get, that they would not decide the matter, but rather inform you with respect to the rules that we already have before this court. And so my suggestion would be that it would add delay and would not add surety with respect to any guidance. It's certainly an option and it's within your discretion, but I have not seen any meaningful advice from the Oregon Supreme Court to your honors when it's been tried in the past. It depends on the interpretation question of ambiguity versus secondary sources. But what about your point of location of the condition in the coverage grant as opposed to otherwise in the contract? And that's a fair point, Judge Payne. Is that something which there's any, will they come back and say read Wombat versus Wombat? I doubt that. What would likely happen, and there is authority in Oregon that recognizes that claims made policies mean what they say. And most courts that have ever dealt with a claim, I know what you're going to get to, Judge Payne. I'm going to reach your qualification in that regard. You could certify to them whether or not a showing of prejudice is required for a reporting requirement contained within the insuring agreement and see what the answer would be because that doesn't rely on the Hoffman analysis. That is a common law court-grafted requirement that has been applied to policies. But I would submit with respect to the proper interpretation of 30 days from the commencement, you would likely receive a Hoffman instruction and something you had probably considered previously. Okay. Counsel, thank both of you for your arguments. We appreciate them. The case is submitted. And we will stand and recess until tomorrow.
judges: Fisher, Gould, Bea